SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Amir Randolph (A-70-15) (076506)**

**Argued January 3, 2017 -- Decided May 3, 2017**

**Albin, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a person charged with a possessory drug offense has automatic standing to challenge a search or seizure.

Defendant Amir Randolph was charged with various drug offenses and moved to suppress evidence. Officers testified at the suppression hearing that, in September 2011, they conducted surveillance of a three-story apartment building. During the surveillance, Markees King stood in the second-floor apartment, and later exited the building, where he was approached by Edward Wright. Wright threw bills on the building's porch, and King handed him a white object and retrieved the money. A second individual came up to King and handed him money and, in return, received a small white object. Detective Goodman believed that he had observed two drug transactions. Officers stopped and arrested Wright and, shortly thereafter, King was arrested as he exited the building.

Sergeant Trowbridge then attempted to enter building. The tenant of the first-floor apartment opened the door, admitting Sergeant Trowbridge into the vestibule. Once inside, Sergeant Trowbridge heard what sounded like someone running from the second floor up to the third floor. He also found a handgun in the vestibule. Sergeant Trowbridge then proceeded alone to the second floor. The door to the second-floor apartment, where King had been sighted, was ajar. From the hallway, Sergeant Trowbridge could see a couch and debris. He described the apartment as appearing to be vacant or abandoned and entered to search for "any additional actors there." As he walked through the apartment, Sergeant Trowbridge observed several items including a television, video gaming system, two couches, boots, sneakers, clothes, a backpack, and a soda bottle, among other things. He also discovered baggies of marijuana, some currency, a box, a cigarette box, and a letter from an insurance company addressed to Amir Randolph (defendant) at a different address. Inside the boxes he found suspected heroin and marijuana. In all, the police recovered thirty-five baggies of marijuana and forty glassine envelopes of heroin.

At the suppression hearing, the prosecutor argued that the warrantless search of the second-floor apartment was valid based on the exigent-circumstances and protective-sweep exceptions to the warrant requirement. Instead of addressing that argument, the trial court upheld the search because defendant did not provide any evidence that he had a reasonable expectation of privacy in the vacant second-floor apartment or in the evidence found there.

At trial, the State's presentation largely mirrored the testimony at the suppression hearing. Defense counsel requested an instruction on "mere presence" and "flight." The trial judge agreed to charge on flight but explained that a charge on "mere presence" was not necessary. The jury asked questions, generally concerning the relationship between defendant, King, and the tenant, and defendant's location when arrested. The trial judge simply reminded the jurors to use their "own good common sense, consider the evidence . . . and give it a reasonable and fair construction in light of your knowledge of how people behave." The jury returned guilty verdicts on all counts.

The Appellate Division reversed, concluding that the trial court erred in upholding the search based on the flawed finding that the second-floor apartment was vacant or abandoned. 441 N.J. Super. 533, 552-53 (App. Div. 2015). The panel remanded to determine whether the search was justified based on the protective-sweep or exigent-circumstances doctrine. The panel also reversed defendant's conviction based on the failure to give a "mere presence" charge. According to the panel, the jury should have been instructed that, without more, defendant's "mere presence" at the place where contraband was seized is insufficient to establish a finding of constructive possession. Finally, the panel raised concerns about the propriety of the flight charge without resolving the issue.

The Court granted the State's petition for certification. 224 N.J. 529 (2016).

1

**HELD**: Defendant had automatic standing to challenge the search of the apartment because he was charged with possessory drug offenses and because the State failed to show that the apartment was abandoned or that defendant was a trespasser. Failing to issue the "mere presence" charge was harmless error.

1. This appeal concerns defendant's standing to challenge the search of the apartment. The New Jersey Constitution's prohibition against unreasonable searches and seizures affords greater protection than the federal Constitution. In New Jersey, the State bears the burden of showing that defendant has no proprietary, possessory, or participatory interest in either the place searched or the property seized. Although the Court does not engage in a reasonable expectation of privacy analysis when a defendant has automatic standing to challenge a search, it does so in determining whether a defendant has a protectible right of privacy in a novel class of objects or category of places. Here, the Court is applying traditional principles of automatic standing to a place that historically has enjoyed a heightened expectation of privacy—the home. No unique circumstances call for the Court to engage in an additional reasonable expectation of privacy analysis as a supplement to its standing rule. (pp. 16-20)

2. The automatic standing rule, however, is subject to reasonable exceptions, and, in this appeal, the Court recognizes three exceptions in cases concerning real property: An accused will not have standing to challenge a search of abandoned property, property on which he was trespassing, or property from which he was lawfully evicted. The State has the burden of establishing that one of those exceptions applies to strip a defendant of automatic standing to challenge a search. (pp. 21-25)

3. In the present case, defendant had automatic standing to challenge the search of the second-floor apartment because he was charged with possessory drug offenses, and because the State failed to establish that Sergeant Trowbridge had an objectively reasonable basis to believe that the apartment was abandoned or that defendant was a trespasser. Regardless of the disarray in the apartment and the fact that it was not fully furnished, there were clear signs that someone occupied it. (pp. 25-27)

4. Importantly, at the suppression hearing, the prosecutor contended that the police conducted a lawful search pursuant to the exigent-circumstances and protective-sweep exceptions to the warrant requirement. The trial court never addressed those substantive grounds. The trial court, moreover, did not apply the well-established principles governing standing. Rather, the court turned to the reasonable expectation of privacy test, typically used in federal courts, and concluded—without any evidence—that the apartment was vacant. The Court, therefore, concludes that the trial court erred in its analysis and that a new suppression hearing must be conducted. (pp. 27-29)

5. The Court next considers whether the trial court erred in not instructing the jury on "mere presence" and, if so, whether the failure to give the charge denied defendant a fair trial. Defendant requested that the trial court read to the jury the Model Charge that instructs that a defendant's "mere presence" at the scene, standing alone, is insufficient to prove guilt. The court denied that request. The trial court was clearly mistaken in its belief that the "mere presence" charge is given only in conspiracy cases. No constraint barred the trial court from giving the "mere presence" charge, and the better course would have been to give the charge to disabuse the jury of any possible notion that a conviction could be based solely on defendant's presence in the building. However, unlike the appellate panel, the Court concludes that the failure to give the "mere presence" charge did not deprive defendant of a fair trial. The charge, as a whole, sufficiently informed the jury—without using the words "mere presence"—that defendant's presence in the building, standing alone, would be insufficient to establish guilt. The Court, therefore, reverse the judgment of the Appellate Division granting defendant a new trial. (pp. 29-32)

6. Finally, the Court agrees with the Appellate Division that, if there is a retrial, the trial court "must carefully consider whether it is appropriate to charge flight, and, if so, must tailor the charge to the facts of the case." 441 N.J. Super. at 563-64. In doing so, the court must determine whether the probative value of evidence of flight is "substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading the jury," N.J.R.E. 403(a), and whether a carefully crafted limiting instruction could ameliorate any potential prejudice. (pp. 33-36)

The judgment of the Appellate Division is **AFFIRMED IN PART and REVERSED IN PART**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

AMIR RANDOLPH,

    Defendant-Respondent.


        Argued January 3, 2017 – Decided May 3, 2017

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 441 N.J. Super. 533 (App. Div.
        2015).

        Frank Muroski and Jenny M. Hsu, Deputy
        Attorneys General, argued the cause for
        appellant (Christopher S. Porrino, Attorney
        General of New Jersey, attorney).

        Margaret R. McLane, Assistant Deputy Public
        Defender, argued the cause for respondent
        (Joseph E. Krakora, Public Defender,
        attorney).

        Alexander R. Shalom argued the cause for
        amicus curiae American Civil Liberties Union
        of New Jersey (Edward L. Barocas, Legal
        Director, attorney; Mr. Shalom, Mr. Barocas,
        and Jeanne M. LoCicero, on the brief).

    JUSTICE ALBIN delivered the opinion of the Court.

    Under our well-established state constitutional

jurisprudence, an accused generally has standing to challenge a

search or seizure whenever "he has a proprietary, possessory or

participatory interest in either the place searched or the property seized." State v. Alston, 88 N.J. 211, 228 (1981). When the accused is charged with committing a possessory drug offense -- as in this case -- standing is automatic, unless the State can show that the property was abandoned or the accused was a trespasser. See State v. Brown, 216 N.J. 508, 529 (2014).

The primary issue in this appeal involves the warrantless search of an apartment, where the police found drugs and evidence allegedly linking defendant to the apartment. Evidence seized from the apartment was the basis for multiple drug charges filed against defendant. At a suppression motion, the State argued that exigent circumstances and the need for a protective sweep justified the entry into the apartment and the seizure of evidence. The trial court upheld the search, apparently on standing grounds, finding that defendant did not have a reasonable expectation of privacy in the apartment.

A panel of the Appellate Division reversed and held that because defendant had automatic standing to challenge the search based on the possessory drug charges, defendant had no burden to establish that he had a reasonable expectation of privacy in the apartment. The panel also rejected the State's assertion, raised for the first time on appeal, that the apartment was abandoned. The panel remanded to the trial court to determine whether the search was justified based on the protective-sweep

2

or exigent-circumstances doctrine.  The panel also reversed defendant's conviction based on the trial court's failure to give a "mere presence" charge.

We affirm the panel's determination that defendant had automatic standing to challenge the search of the apartment because he was charged with possessory drug offenses and because the State failed to show that the apartment was abandoned or that defendant was a trespasser.  Our automatic standing jurisprudence eliminates any inquiry into defendant's reasonable expectation of privacy in circumstances such as here.  We therefore remand to determine whether the search of the apartment was justified by an exception to the warrant requirement.

Additionally, although we find that the better course would have been to give the jury an instruction on "mere presence," the failure to do so was harmless error.  We therefore vacate the panel's judgment requiring a new trial on that issue.

I.

A.

Defendant Amir Randolph was charged in a multi-count indictment with third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); third-degree possession with intent to distribute heroin in a quantity less than one-half ounce, N.J.S.A. 2C:35-5(a)(1), (b)(3); third-degree possession with

intent to distribute heroin within 1000 feet of school property, N.J.S.A. 2C:35-7; second-degree possession with intent to distribute heroin within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1; fourth-degree possession with intent to distribute marijuana in a quantity less than one ounce, N.J.S.A. 2C:35-5(a)(1), (b)(12); third-degree possession with intent to distribute marijuana within 1000 feet of school property, N.J.S.A. 2C:35-7; and third-degree possession with intent to distribute marijuana within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1.[1]

Defendant moved to suppress evidence that he claimed was procured by an unconstitutional search. During a three-day suppression hearing, the State called as witnesses Sergeant Stephen Trowbridge and Detective Anthony Goodman of the Jersey City Police Department. At that hearing, the officers testified to the following events.

On the morning of September 19, 2011, Jersey City police officers conducted surveillance of a three-story apartment building, apparently consisting of three units, at 77 Grant Avenue in Jersey City. During the surveillance, Markees King

---

[1] Defendant was also charged with conspiracy to distribute drugs. The State dismissed that charge at trial before its submission to the jury. Markees King and Edward Wright were charged as codefendants in this indictment. Because they are not parties to this appeal, there is no need to specify the charges that applied to them.

4

stood in the second-floor apartment, peering out the window. As King exited the building, Edward Wright approached him. Wright threw three or four bills on the building's porch, and King handed him a white object and retrieved the money. A second individual came up to King and handed him money and, in return, received a small white object. King counted the money and then reentered the building as the two purchasers left the area.

Detective Goodman believed that he had observed two drug transactions. Officers stopped and arrested Wright and recovered a glassine bag of heroin from his pants pocket. The second drug purchaser somehow eluded the police. Shortly thereafter, King was arrested as he exited the building.

At this point, Sergeant Trowbridge attempted to gain entry into the building. He knocked on the window of the first-floor apartment, and the tenant opened the door, admitting Sergeant Trowbridge into the vestibule. Moments before Sergeant Trowbridge gained entry, Andrew Bentley walked out of the building and was overheard by Detective Goodman speaking into a cell phone, saying, "they're coming in, they're at the door now."

Once in the building's vestibule, Sergeant Trowbridge heard what sounded like someone running from the second floor up to the third floor. As he waited for backup officers, Sergeant Trowbridge opened the lid of a grill located at the bottom of

the stairs and found a handgun. When a police officer arrived, Sergeant Trowbridge instructed him to secure the weapon, and then Sergeant Trowbridge proceeded alone to the second floor.

The door to the second-floor apartment, where King had been sighted, was ajar. From the hallway, Sergeant Trowbridge could see a couch inside as well as "debris thrown about." He described the apartment as appearing to be vacant or abandoned and entered to search for "any additional actors there." As he walked through the apartment, Sergeant Trowbridge observed, among other things, a television and video gaming system, two couches with clothing draped on one, Timberland boots, a pair of Nike sneakers, a backpack, a kitchen without a refrigerator, and clothes strewn on the floor along with a cigarette pack and a soda bottle. He also discovered on the floor Ziploc baggies of marijuana, some currency, a silver box, a Newport cigarette box, and a letter from Zurich American Insurance Company addressed to Amir Randolph (defendant) at 213 Mallory Avenue, Number 1, Jersey City. He looked inside the silver and Newport boxes and found glassine bags of suspected heroin and an additional marijuana stash. In all, the police recovered thirty-five Ziploc baggies of marijuana and forty glassine envelopes of heroin.

The couches accounted for the only furniture in the apartment. The police, however, did not speak with the landlord

to determine whether the apartment was rented and, if so, to whom.

As Sergeant Trowbridge exited the apartment into the hallway, he encountered members of the United States Marshals Fugitive Task Force, who were proceeding to the third floor with a warrant to arrest defendant for a homicide unrelated to the drug investigation. The Marshals apparently were conducting a separate surveillance and investigation, unbeknownst to the Jersey City police. The Marshals found defendant, along with a woman and a child, in the third-floor apartment. Defendant was taken into custody.

At the conclusion of the State's presentation, the trial court denied defendant's request to call Detective Matthew Stambuli as a witness.[2] The defense then rested.

The prosecutor argued that the warrantless search of the second-floor apartment was valid based on the exigent-circumstances and protective-sweep exceptions to the warrant requirement. Instead of addressing that argument, the trial court upheld the search because defendant did not provide any

---

[2] Defendant intended to call Detective Stambuli to testify that the cell phone carried by Andrew Bentley was inoperable. The testimony evidently was offered to rebut Detective Goodman's testimony that Bentley spoke into the cell phone with the message, "they're coming in." The prosecutor objected to the testimony, and the trial court ruled that the testimony was "irrelevant to what the police officers did at the time."

evidence that he had a reasonable expectation of privacy in the vacant second-floor apartment or in the narcotics, paraphernalia, and paperwork found there.

B.

At trial, the State's presentation largely mirrored the testimony at the suppression hearing. The jury, however, learned additional details. When King was arrested, the police seized from him a Ziploc bag containing marijuana and $132 in cash. Furthermore, defendant was arrested in a bedroom in the third-floor apartment, and the police recovered from him $429 in small denominations, totaling 81 bills in all. The State's drug expert testified that possession of currency in small denominations is consistent with street-level drug dealing.

At the charge conference, defense counsel requested that the court instruct the jury on "mere presence" and "flight." The trial judge agreed to charge on flight but explained that a charge on "mere presence" was not necessary because the State intended to dismiss the conspiracy count.

During its deliberations, the jury asked the court the following questions:

> What happens if we are not unanimous about the decision of one of the Defendants? Was there statements provided about the relationship between [defendant] and tenant, [defendant] and [King], [King] and tenant?
>
> . . . .

8

> Where in the third floor apartment was [defendant] arrested from and where was he hiding?

In response, the trial judge simply reminded the jurors to use their "own good common sense, consider the evidence . . . and give it a reasonable and fair construction in light of your knowledge of how people behave."

The jury returned guilty verdicts on all counts. The court sentenced defendant to a seven-year state-prison term subject to a three-year parole-ineligibility period on the charge of second-degree possession with intent to distribute heroin within 500 feet of a public housing facility. The court also imposed a concurrent five-year term subject to a three-year parole-ineligibility period on the charge of third-degree possession with intent to distribute marijuana within 1000 feet of school property. The court merged the other counts into those convictions. All requisite fines and penalties were imposed.

C.

A panel of the Appellate Division concluded that the trial court erroneously upheld the search based on its flawed finding that the second-floor apartment was vacant or abandoned. State v. Randolph, 441 N.J. Super. 533, 552-53 (App. Div. 2015). The panel noted that defendant had automatic standing to challenge the search, unless the State established that the apartment was

abandoned or that he was a trespasser.  Id. at 548-49.  The panel found that the presence of a couch, a television and a gaming console, sneakers and boots, clothes, and other items did not give the police an objectively reasonable basis to believe that the apartment was abandoned.  Id. at 545, 553.  The panel also faulted the trial court for imposing on defendant the burden of proving that he had a reasonable expectation of privacy in the apartment in contravention of the automatic standing rule.  Id. at 553.  The panel therefore remanded for a new suppression hearing to determine whether the search was justified based on the exigent-circumstances or protective-sweep exception to the warrant requirement.  Ibid.

The panel, moreover, held that the trial court's failure to give a "mere presence" charge at defendant's request constituted reversible error and therefore ordered a new trial.  Id. at 561-62.  According to the panel, the jury should have been instructed that, without more, defendant's "mere presence" at the place where contraband was seized, i.e., the building at 77 Grant Avenue, is insufficient to establish a finding of constructive possession.  Id. at 558-60.  The panel stated that the jury's questions, which "sought guidance from the court respecting the relationship of defendant to the apartment," confirmed the need for a "mere presence" charge.  Id. at 559-60.

Last, the panel raised concerns about the propriety of the

10

flight charge without resolving the issue.  Id. at 562-64.  The panel pointed out that Sergeant Trowbridge could not identify defendant as the person running upstairs; that defendant did not have a cell phone when arrested; that defendant may have been eluding the U.S. Marshals, who had a warrant for his arrest; and that Bentley may have been notifying the U.S. Marshals -- as opposed to defendant -- about Sergeant Trowbridge's entry into the building.  Id. at 556-57.  The panel also noted that the jury never learned that the Marshals were pursuing defendant on a homicide warrant.  Id. at 557.  The panel reasoned that, to support a flight charge, the "evidence [of flight] must unequivocally support a reasonable inference that the actor's conduct following the commission of a crime may be relied upon as evidence of the actor's guilt" regarding the crime charged.  Id. at 563.  The panel instructed the remand court to "carefully consider whether it is appropriate to charge flight, and, if so, [to] tailor the charge to the facts of the case to prevent juror confusion."  Id. at 563-64.

We granted the State's petition for certification.  State v. Randolph, 224 N.J. 529 (2016).  We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU-NJ) to participate as amicus curiae.

II.

A.

11

The State claims that this case is not about standing, conceding that defendant had automatic standing to challenge the search because he faced possessory drug charges. Instead, the State argues that the real issue is that defendant failed to prove that he had "a reasonable expectation of privacy in the apartment to prevail on his claim that his rights were violated." Despite defendant's automatic standing, the State insists that defendant had the burden of showing that the police violated his legitimate expectation of privacy in searching the second-floor apartment and that, barring such a showing, he has no right to the suppression of evidence seized from the premises. To advance this argument, the State relies primarily on State v. Hinton, 216 N.J. 211 (2013), a case in which this Court found that a defendant evicted from an apartment no longer had an expectation of privacy in the premises or a right to object to a search of it. Secondarily, the State contends that because the apartment was "apparently vacant" and used for drug activity, the police had an objectively reasonable basis to enter and search the premises.

The State further asserts that, contrary to the Appellate Division's ruling, the trial court's refusal to supplement the instruction on constructive possession with a "mere presence" charge was entitled to deference. According to the State, the constructive-possession instruction "adequately explained to the

12

jury that mere presence was an insufficient basis to find defendant guilty and that he could not be found guilty based solely on his proximity to the drugs."

The State also urges that we vacate the Appellate Division's remand order and instruct that the jury may consider evidence of flight, even if that evidence is less than "unequivocal."

B.

Defendant counters that, based on the possessory drug charges filed against him, the Appellate Division correctly found that he had automatic standing to challenge the warrantless search of the apartment. Defendant acknowledges that there are exceptions to the standing rule. Had the State proven that the apartment was abandoned or that defendant was a trespasser, defendant concedes he would not have had standing to object to the search. Defendant, however, submits that, in contravention of our standing jurisprudence, the State has "invented" an additional and unnecessary inquiry that shifts the burden to defendant to prove that he had an expectation of privacy in the place searched -- here, the apartment. Defendant explains that a reasonable expectation of privacy analysis is undertaken only when a court must determine whether a new class of objects or places is protected by the Constitution and that such an analysis is inappropriate for a home, which is a well-

13

established constitutionally protected sphere.

Defendant also argues that the Appellate Division correctly reversed his convictions because the trial court erred in failing to charge the jury on "mere presence" and compounded that error by omitting the charge when the jury asked for clarification concerning defendant's relationship to the apartment. Additionally, defendant asks that we affirm the Appellate Division's remand order cautioning against a flight charge unless the evidence unequivocally supports an inference of flight.

C.

Amicus ACLU-NJ argues that the State's proposed approach undermines the automatic standing rule because it relieves the State of its burden of establishing an exception to the rule, e.g., abandonment or trespass, and shifts the burden to defendant to prove that he possessed a reasonable expectation of privacy in the apartment. That, the ACLU-NJ states, will "overturn longstanding precedent on 'automatic standing.'" The ACLU-NJ places particular emphasis on "[t]he bizarre fact pattern of Hinton" -- not present here -- that implicated a complex statutory backdrop involving an eviction action in which a court officer, executing a warrant of removal, reported the presence of drugs and allowed the police entry onto the premises. According to the ACLU-NJ, under the novel

14

circumstances in Hinton, the Court made inquiry into the reasonable expectation of privacy of the evicted tenant, who essentially was a trespasser. The ACLU-NJ urges this Court to confine Hinton to its unique setting and not to accept the State's invitation to expand Hinton and strike down the automatic standing rule.

## III.

We first conclude that the trial court erred in denying defendant's motion to suppress on the ground that he failed to show that he possessed a reasonable expectation of privacy in the apartment searched. In light of the charged possessory drug offenses, defendant had automatic standing to challenge the search of the apartment, unless the State established an exception to that rule. The State bore the burden of proving that the apartment was abandoned or that defendant was a trespasser but failed to advance the argument at the suppression hearing.

Before addressing the issue of standing, we turn first to some basic search and seizure principles.

## A.

In virtually identical language, the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7.  Any constitutional challenge to the search of a place or seizure of an item must begin with certain fundamental inquiries.  Does the defendant have standing to challenge the search or seizure?  If the defendant has standing, did the police secure a warrant to search or seize by constitutional means, and if no warrant issued, was the search or seizure justified by an exception to the warrant requirement?

The only issue here concerns whether defendant had standing to challenge the search of the second-floor apartment at 77 Grant Avenue.

B.

In a series of cases, beginning with State v. Alston, we have repeatedly reaffirmed that, under Article I, Paragraph 7 of the New Jersey Constitution, "a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized."  88 N.J. 211, 228 (1981); see State v. Lamb, 218 N.J. 300, 313 (2014) ("New Jersey has retained the automatic standing rule . . . .").  Our standing rule deviates from the federal approach, which requires that "a person alleging a Fourth Amendment violation . . . establish that law enforcement

16

officials violated 'an expectation of privacy' that he possessed in the place searched or item seized."  State v. Johnson, 193 N.J. 528, 542 (2008) (quoting United States v. Salvucci, 448 U.S. 83, 93, 100 S. Ct. 2547, 2553, 65 L. Ed. 2d 619, 629 (1980)).

We explained in Alston, supra, that the more amorphous federal standing rule does not provide New Jersey's citizens sufficient protection from unlawful searches and seizures and that our standing rule is "more consonant with our own interpretation of the plain meaning of Article 1, Paragraph 7 of our State Constitution."  88 N.J. at 225-27.  Accordingly, the New Jersey Constitution's prohibition against unreasonable searches and seizures affords New Jersey citizens greater protection than that provided by the United States Constitution. Lamb, supra, 218 N.J. at 313-14.

The points of departure between federal and state concepts of standing are clear.  Under New Jersey law, the State bears the burden of showing that defendant has no proprietary, possessory, or participatory interest in either the place searched or the property seized.  State v. Brown, 216 N.J. 508, 528 (2014).  Under federal law, the defendant has the burden of showing that he had a reasonable expectation of privacy that was violated by the police.  See United States v. Jones, 565 U.S. 400, 406, 132 S. Ct. 945, 950, 181 L. Ed. 2d 911, 919 (2012).

17

Although the proprietary, possessory, or participatory interest standard "incorporates the notion of a reasonable expectation of privacy, [it] also advances other important state interests." Johnson, supra, 193 N.J. at 543. Those interests are evident in the three principles undergirding New Jersey's standing rule.

The first principle is that "a person should not be compelled to incriminate himself by having to admit ownership of an item that he is criminally charged with possessing in order to challenge the lawfulness of a search or seizure." Ibid. (citing Alston, supra, 88 N.J. at 222 n.6). The second is that the State should not take seemingly conflicting positions at a suppression motion and trial. Ibid. (citing Alston, supra, 88 N.J. at 223). Thus, our standing rule restricts the State from arguing, on one hand, that the defendant did not possess a privacy interest in the place searched or property seized for standing purposes while, on the other, arguing that the defendant is inextricably tied to the place searched and possessed the item seized to prove his guilt. Ibid. The last principle is that "by allowing a defendant broader standing to challenge evidence derived from unreasonable searches and seizures under our State Constitution, we increase the privacy rights of all New Jersey's citizens and encourage law enforcement officials to honor fundamental constitutional

18

principles." Ibid. (citing Alston, supra, 88 N.J. at 226 n.8).

Thus, a defendant challenging a search under New Jersey's

standing rule may be vindicating the rights of others as well.

The State argues that automatic standing does not relieve

defendant of his obligation to show that he had a reasonable

expectation of privacy in the apartment searched. We dismissed

a similar argument in Johnson, stating, "the State's proposed

approach merely places another layer of standing -- the federal

standard -- on top of our automatic standing rule." See id. at

546. We have "roundly rejected hinging a defendant's right to

challenge a search based on 'a reasonable expectation of

privacy' analysis." Ibid. (citing Alston, supra, 88 N.J. at

226-27).

C.

Although we do not engage in a reasonable expectation of

privacy analysis when a defendant has automatic standing to

challenge a search, we do so in determining whether a defendant

has a protectible Fourth Amendment and Article I, Paragraph 7

right of privacy in a novel class of objects or category of

places.

For example, in State v. Earls, we determined for the first

time that "individuals have a reasonable expectation of privacy

in the location of their cell phones under the State

Constitution" and therefore the State must obtain a warrant to

19

secure location information from a cell phone provider. 214 N.J. 564, 568-69 (2013). Having made that finding, a similar expectation of privacy analysis is not required again. After Earls, individuals whose cell phones are used as tracking devices have standing to challenge information secured from a cell phone provider without a warrant or without justification under an exception to the warrant requirement.

We also engaged in the same expectation of privacy analysis in determining, for the first time, that the State must serve a grand jury subpoena to secure an individual's "subscriber information" from an Internet service provider, State v. Reid, 194 N.J. 386, 389 (2008), electric utility records, State v. Domicz, 188 N.J. 285, 299 (2006), or bank records, State v. McAllister, 184 N.J. 17, 32-33 (2005). Having decided in those then-novel cases that individuals have a protectible Article I, Paragraph 7 possessory or proprietary interest, future grievants in criminal cases have automatic standing to challenge a search or seizure of those records not secured by constitutional means.

Here, we are applying traditional principles of automatic standing to a place that historically has enjoyed a heightened expectation of privacy -- the home. No unique circumstances call for this Court to engage in an additional reasonable expectation of privacy analysis as a supplement to our standing rule.

20

The automatic standing rule, however, is subject to reasonable exceptions.

D.

Today, we recognize three exceptions to the automatic standing rule in cases concerning real property. An accused will not have standing to challenge a search of abandoned property, Brown, supra, 216 N.J. at 529, property on which he was trespassing, ibid., or property from which he was lawfully evicted, see generally Hinton, supra, 216 N.J. 211. The State has the burden of establishing that one of those exceptions applies to strip a defendant of automatic standing to challenge a search. Brown, supra, 216 N.J. at 527-28.

In Brown, we rejected the State's argument that the defendant did not have standing to challenge the warrantless entry and search of a home for drugs because the structure was abandoned. Id. at 541. We upheld the trial court's finding that the State had not established that the targeted row house was "abandoned," even though the premises were in deplorable condition, with a propped up door, a broken window, a missing electric meter, a living room in disarray, and a floor littered with trash bags filled with old clothes and other items. Id. at 540. We acknowledged the sad fact that "[t]here are impoverished citizens who live in squalor and dilapidated housing, with interiors in disarray and in deplorable condition,

21

and yet these residences are their homes." Id. at 534. We noted that the warrant requirement does not have a "trashy house exception," ibid. (quoting United States v. Harrison, 689 F.3d 301, 311 (3d Cir. 2012), cert. denied, ___ U.S. ___, 133 S. Ct. 1616, 185 L. Ed. 2d 602 (2013)), and that "[a] home is not deemed 'abandoned' merely because a person is dealing drugs from it," ibid.

We also made the simple observation "that a house or building, even if seemingly unoccupied, typically will have an owner." Id. at 533. That notion extends to an apartment as well. Thus, one reasonable step a police officer might take to determine whether a building is abandoned is to attempt to identify the owner by inspecting deeds, tax-assessment records, or utility records.[3] Ibid.

Practical steps can also be taken to determine whether a person is a trespasser. A trespasser does not have standing to challenge a search because "a trespasser, by definition, does not have a possessory or proprietary interest in property where he does not belong -- where he does not have permission or consent to be." Id. at 535. A landlord of a building or his

---

[3] Sergeant Trowbridge used the terms "vacant" and "abandoned" in describing the second-floor apartment. That property is vacant does not mean that it is abandoned. Indeed, property may be vacant because it has yet to be leased or for any of a number of other reasons.

agent -- if identifiable and available -- presumably would know whether an apartment is leased and to whom. Indeed, contacting the person who knows the rental status of the apartment is one way the police can identify a trespasser.

We did not suggest in Brown that a records check is the only means for determining whether a building is abandoned or a defendant is a trespasser. Id. at 533. The condition of a building and its interior and the surrounding environs, as well as a police officer's personal knowledge of the neighborhood and its residents, are other critical factors -- but not necessarily all -- that may come into play. Id. at 534. One example is that a police officer may know that the owner of certain property is on vacation and that a vagrant on the property is not privileged to be there.

Last, a person lawfully evicted from property -- and retaining no further proprietary interest in the property -- will stand in the shoes of a trespasser and not have the right to challenge a search. See generally Hinton, supra, 216 N.J. 211. There, in accordance with the Anti-Eviction Act, the Tenant Hardship Act, and the Fair Eviction Notice Act, a landlord obtained from a Superior Court judge a warrant of removal, which instructed "a Special Civil Part Officer to 'dispossess the tenant and place the landlord in full possession of the premises.'" Id. at 216, 224. The warrant, placed under

23

the door of the tenant's apartment, directed the tenant to remove all possessions within three days of the issuance of the warrant. Id. at 217. After the expiration of the three days, during which the tenant took no action to vacate the premises, a Special Civil Part Officer entered the apartment to change the locks and inspect the premises. Id. at 218. During the inspection, the Special Civil Part Officer observed illicit drugs and called the police, who entered and searched the apartment. Id. at 218-19.

In that "novel case aris[ing] in unusual circumstances," we engaged in a reasonable expectation of privacy analysis and concluded that the defendant -- who claimed the status of a tenant -- did not have a right to object to the search. Id. at 235-36. The novelty of that case required that we examine the reach of the defendant's privacy interests. Having determined that the evicted tenant had no protectible privacy right to object to an entry of the police onto the premises in such circumstances, if a similar case arises, the simple answer will be that the former tenant's status is equivalent to that of a trespasser and he will not have standing to challenge the search. We reject the State's reading of Hinton because it conflates New Jersey's standing precedents with the federal standard and would upend our long-established jurisprudence in this area.

24

The standard for proving that a building is abandoned or that a defendant is a trespasser is straightforward. If the State can establish that, "in light of the totality of the circumstances, a police officer ha[d] an objectively reasonable basis to believe a building [was] abandoned," Brown, supra, 216 N.J. at 532, or "an objectively reasonable basis to believe [the defendant] was a trespasser," id. at 535, a defendant will not have standing to challenge a search.

We must not forget that the issue here is merely whether defendant had standing to challenge the search. The police can always search a building or an apartment armed with a lawfully issued warrant or pursuant to an exception to the warrant requirement, such as when exigent circumstances require immediate action to preserve evidence or ensure the safety of an individual or the public. See, e.g., State v. Edmonds, 211 N.J. 117, 129-30 (2012). When in doubt, the safest course for law enforcement -- and one consonant with the liberty interests of our citizens -- is to secure a warrant when doing so is practicable.

E.

We now apply the standing principles discussed above to the facts before us. We conclude that defendant had automatic standing to challenge the search of the second-floor apartment at 77 Grant Avenue because he was charged with possessory drug

25

offenses, see Alston, supra, 88 N.J. at 228, and because the State failed to establish that Sergeant Trowbridge had an objectively reasonable basis to believe that the apartment was abandoned or that defendant was a trespasser, see Brown, supra, 216 N.J. at 532.

For sure, the police had a reasonable basis to believe that the second-floor apartment was being used in a drug-distribution scheme. Markees King was observed in that apartment immediately before he engaged in what appeared to be two hand-to-hand drug transactions outside the building. Absent evidence to the contrary, King's presence in the apartment was an indication that he was a resident of or had been invited onto the premises. As noted earlier, "[a] home is not deemed 'abandoned' merely because a person is dealing drugs from it." Brown, supra, 216 N.J. at 534.

Also of importance is the fact that the outside door to the building was locked and that Sergeant Trowbridge gained access by having the first-floor tenant open the door. The locked outside door was evidence that the building's residents intended to keep the public from entering even the common areas without invitation. Additionally, when Sergeant Trowbridge arrived on the second-floor landing, the door to the apartment was ajar. Before entering, he could see a couch and debris. After entering the apartment, he observed another couch, Timberland

26

boots, a pair of Nike sneakers, a backpack, a television and video gaming system, and clothes draped on a couch and strewn on the floor along with a cigarette pack, a soda bottle, and mail.

Regardless of the disarray in the apartment and the fact that it was not fully furnished, there were clear signs that someone occupied it. The police did not contact the landlord to determine whether the second-floor apartment had been leased, and nothing in the record indicates that the first-floor resident was asked about the status or possible occupants of the upstairs apartment. Nothing in the record suggests that defendant was not an invitee in the apartment, and indeed the State argued at trial that the mail addressed to defendant found inside the apartment was evidence of his presence in the apartment.

We hold that, in light of the totality of the circumstances, the police did not have an objectively reasonable basis to believe that the second-floor apartment was abandoned.

Importantly, at the suppression hearing, the prosecutor did not argue that defendant lacked standing to challenge the search on the basis that the apartment was abandoned. Instead, the prosecutor contended that the police conducted a lawful search pursuant to the exigent-circumstances and protective-sweep exceptions to the warrant requirement. The trial court never addressed the substantive grounds on which the prosecutor

27

attempted to justify the search.  The trial court, moreover, did not apply our well-established principles governing standing. Rather, the court turned to the reasonable expectation of privacy test, typically used in federal courts, and then came to a conclusion -- not supported by the evidence -- that the apartment was vacant.

Like the Appellate Division, we conclude that the trial court erred in its analysis and therefore a new suppression hearing must be conducted.  See Randolph, supra, 441 N.J. Super. at 556.  We also agree with the Appellate Division that at the new hearing both the State and defendant should be afforded the opportunity to present evidence concerning the prosecutor's claimed justification for the warrantless entry and search.[4]  Id. at 555-56.  A full record should be developed to determine whether the exigent-circumstances or protective-sweep doctrine, or both, justified the entry and search and, if so, the scope of

---

[4] The panel's decision to remand for a new suppression hearing was prompted, in part, by its conclusion that the trial court had erred in barring the defense from calling Detective Stambuli to testify about Bentley's allegedly inoperable cell phone. Randolph, supra, 441 N.J. Super. at 554.  We agree with the panel that Detective Stambuli should not have been kept off the stand.  Defendant had the right to challenge Detective Goodman's credibility.  Detective Stambuli's proffered testimony, seemingly, would have contradicted Detective Goodman's account that he overheard Bentley speaking into the cell phone, saying, "they're coming in, they're at the door now."  The State hypothesized that the call was intended to alert defendant, who remained in the building.

28

the search.  On this new record, the trial court will make the appropriate credibility and factual findings.  We express no view on the merits of the issues to be decided on remand.

IV.

We now consider whether the trial court erred in not instructing the jury on "mere presence" and, if so, whether the failure to give the charge denied defendant a fair trial.

In summation, the prosecutor argued that the jury should conclude that defendant was guilty of possession with intent to distribute drugs based on (1) the discovery of drugs in the second-floor apartment along with mail addressed to defendant, albeit to a different address, (2) Sergeant Trowbridge's hearing the sound of someone running from the second to the third floor, and (3) the ultimate arrest of defendant "hiding" in the third-floor apartment.

Defendant requested that the trial court read to the jury the Model Charge that instructs that a defendant's "mere presence" at the scene, standing alone, is insufficient to prove guilt.  The court denied that request.  The Model Charge on accomplice liability indicates that the "mere presence" charge should be given when appropriate.  The Model Charge on "mere presence," in part, provides:

> Mere presence at or near the scene does not
> make one a participant in the crime, nor does
> the failure of a spectator to interfere make

29

him/her a participant in the crime. It is, however, a circumstance to be considered with the other evidence in determining whether he/she was present as an accomplice. Presence is not in itself conclusive evidence of that fact. Whether presence has any probative value depends upon the total circumstances. To constitute guilt there must exist a community of purpose and actual participation in the crime committed.

[Model Jury Charge (Criminal), "Liability for Another's Conduct" (N.J.S.A. 2C:2-6) (May 1995).]

The court did not instruct the jury on accomplice liability but did give the Model Charge on constructive and joint possession concerning the drugs found in the second-floor apartment. The court stated:

Constructive possession means possession in which the possessor does not physically have the item on his or her person, but is aware that the item is present and is able to exercise intentional control or dominion over it.

So, someone who has knowledge of the character of an item and knowingly has both the power and the intention at a given time to exercise control over it, either directly or through another person or persons, is then in constructive possession of that item.

[Cf. Model Jury Charge (Criminal), "Possession" (N.J.S.A. 2C:2-1) (June 2014).]

The Appellate Division "recognize[d] that the model jury charge on constructive possession does not include a charge on mere presence," Randolph, supra, 441 N.J. Super. at 561, yet nevertheless concluded that the trial court erred in not giving

30

the "mere presence" charge in the circumstances of this case, particularly given the jury's inquiry into "the relationship between [defendant] and tenant, [defendant] and [King], [King] and tenant," id. at 558. To support that conclusion, the panel cited a number of cases indicating that, in certain circumstances, the "mere presence" charge may further elucidate principles related to constructive possession. Id. at 558-62; see State v. Whyte, 265 N.J. Super. 518, 523 (App. Div. 1992) ("[C]onstructive possession cannot be based on mere presence at the place where contraband is located. There must be other circumstances or statements of defendant permitting the inference of defendant's control of the contraband."), aff'd, 133 N.J. 481 (1993); see also State v. Palacio, 111 N.J. 543, 549-54 (1988); State v. Shipp, 216 N.J. Super. 662, 664-65 (App. Div. 1987).

The trial court was clearly mistaken in its belief that the "mere presence" charge is given only in conspiracy cases. No constraint barred the trial court from giving the "mere presence" charge, and the better course would have been to give the charge to disabuse the jury of any possible notion that a conviction could be based solely on defendant's presence in the building.

The appellate panel expressed "serious doubt about whether the jurors' verdicts [were] based on a misunderstanding of the

31

law" and therefore vacated defendant's convictions and remanded for a new trial. Randolph, supra, 441 N.J. Super. at 561-62. Unlike the panel, we do not believe that the failure to give the "mere presence" charge was "clearly capable of producing an unjust result," see R. 2:10-2, even if giving that additional charge would have been advisable. We come to that conclusion because the jurors were instructed that defendant could not be found guilty unless the State proved (1) defendant knew that the drugs were in the second-floor apartment and (2) defendant had the power and intention to exercise control over the drugs. The charge, as a whole, sufficiently informed the jury -- without using the words "mere presence" -- that defendant's presence in the building, standing alone, would be insufficient to establish guilt. See State v. Montesano, 298 N.J. Super. 597, 612-15 (App. Div.), certif. denied, 150 N.J. 27 (1997) (holding that possession and constructive-possession charges, read in their entirety, "left no room to doubt that 'mere presence' was insufficient to bring about a finding of the necessary elements of possession").

Accordingly, we reverse the judgment of the Appellate Division granting defendant a new trial. We remind our trial courts, however, that every precaution should be taken to fully inform the jury on all applicable legal principles that will assist it in fairly deciding the issues. See State v. Brown,

32

138 N.J. 481, 522 (1994) ("Our decisions have consistently emphasized that clear and correct jury instructions are essential for a fair trial."). Although the absence of the "mere presence" charge did not deny defendant a fair trial, giving the charge would have done no harm and possibly would have been of some benefit. In the event defendant is granted a new trial based on the outcome of the new suppression hearing, the "mere presence" charge should be included in the instructions read to the jury.

V.

Last, we agree with the Appellate Division that, if there is a retrial, the trial court "must carefully consider whether it is appropriate to charge flight, and, if so, must tailor the charge to the facts of the case to prevent juror confusion." Randolph, supra, 441 N.J. Super. at 563-64.

At trial, defendant requested the flight charge for reasons not articulated or evident on the record. That clearly opened the door for the prosecutor to argue flight in summation, which the prosecutor did to good effect. In his closing statement, the prosecutor told the jury:

> You can consider . . . the fact that [defendant] ran from [the] second floor to [the] third floor as consciousness of guilt. . . . [I]n so running[, he] was putting distance between himself and the drugs. He was putting distance between himself and those police officers, who he knew, based upon Mr.

33

> Bentley's phone call, were on their way into
> [the building].

Defendant did not object to this argument.

No one actually observed defendant fleeing from the police -- that inference had to be drawn from Sergeant Trowbridge's testimony that he heard someone running from the second to the third floor after he gained entry into the vestibule of the building. Although that fact might not have warranted the withholding of a flight charge, another fact should have given the trial court pause. At the very same time that the Jersey City police was conducting its investigation and surveillance of 77 Grant Avenue for drug activity, United States Marshals had the building under watch for the purpose of executing a warrant to arrest defendant on a homicide charge. Indeed, as Sergeant Trowbridge was exiting the second-floor apartment, the Marshals were rushing to the third floor to arrest defendant.

That raises the inevitable question. If defendant, in fact, was fleeing up the stairs, was his flight prompted by an attempt to escape detection for drug dealing or for a homicide? The jury never learned that the United States Marshals were on defendant's trail and arrested him in the building at the time of the Jersey City police investigation. Of course, such a disclosure would have been highly prejudicial given that defendant was on trial for drug offenses and not for committing

34

a homicide. Because of what it did not know, the jury could not give weight to evidence that any flight might have been motivated for reasons other than the drug investigation.

In accordance with the Model Charge on flight, the court instructed the jury:

> If you find that the defendant, fearing that an accusation or arrest would be made against him on the charges involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest on that charge, then you may consider such flight, in connection with all the other evidence in the case, as an indication or proof of consciousness of guilt.
>
> [(emphasis added). See Model Jury Charge (Criminal), "Flight" (May 2010).]

Flight from the scene of a crime, depending on the circumstances, may be evidential of consciousness of guilt, provided the flight pertains to the crime charged. State v. Mann, 132 N.J. 410, 418-19 (1993); see also State v. Wilson, 57 N.J. 39, 49 (1970) ("A jury may infer that a defendant fled from the scene of a crime by finding that he departed with an intent to avoid apprehension for that crime." (emphasis added)). The Model Jury Charge, our jurisprudence, and common sense all suggest that flight from the scene for reasons unrelated to the crime charged would not be probative of guilt on that charge.

The difficult task for a jury, of course, is determining a defendant's motivation. Flight will have "legal significance"

35

if the circumstances "reasonably justify an inference that it was done with a consciousness of guilt" to avoid apprehension on the charged offense. State v. Ingram, 196 N.J. 23, 46 (2008) (quoting Mann, supra, 132 N.J. at 418-19). A jury must be able to draw reasonable inferences from the evidence; it may not be left to speculate. We agree with the Appellate Division that evidence of flight must be "intrinsically indicative of a consciousness of guilt." Randolph, supra, 441 N.J. Super. at 562 (quoting State v. Pindale, 249 N.J. Super. 266, 283 (App. Div. 1991)). We disagree, however, with its assertion that evidence of flight "must unequivocally support a reasonable inference" of the defendant's guilt. Id. at 563 (emphasis added). There is no support in our jurisprudence for so high a bar to the admission of such evidence.

In conclusion, should the case be retried, the trial court must cautiously consider whether, given the peculiar facts in this case, a flight charge is appropriate. In doing so, the court must determine whether the probative value of evidence of flight is "substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading the jury," N.J.R.E. 403(a), and whether a carefully crafted limiting instruction could ameliorate any potential prejudice.

VI.

For the reasons expressed, we affirm the Appellate

36

Division's judgment reversing the trial court's denial of defendant's suppression motion but reverse its judgment granting a new trial based on the trial court's failure to charge the jury on "mere presence."  We remand to the trial court for proceedings consistent with this opinion.


    CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.