**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5598-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ALEXIS NUNEZ,

      Defendant-Appellant.

_____

Argued October 24, 2018 – Decided November 9, 2018

Before Judges Nugent and Reisner

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-08-1057.

Tamar Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Tamar Lerer, of counsel and on the briefs).

Evgeniya Sitnikova, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Evgeniya Sitnikova, of counsel and on the briefs).

PER CURIAM

Defendant Alexis Nunez appeals from his conviction for possession of a firearm by a convicted felon. His appeal focuses on a May 15, 2017 order denying his suppression motion. We affirm.

I

By way of background, defendant filed a motion to suppress evidence found during a search of his garage, which the police conducted pursuant to a search warrant. Defendant challenged the search warrant on two grounds. First, defendant claimed that Officer Bove gave inaccurate information about the garage, in his affidavit in support of the warrant application. Second, invoking the "fruit of the poisoned tree" doctrine, defendant asserted that the search warrant application was the product of the unlawful stop of a co-defendant's vehicle and an unlawful stop of defendant. See Wong Sun v. United States, 371 U.S. 471, 485 (1963).

Before the trial judge heard any testimony, he asked for a copy of the warrant affidavit, because neither party had provided it, although it was the subject of the hearing. Without objection from the defense, the State provided the judge with a copy of Officer Bove's affidavit.[1] Officer Bove then testified at the hearing. During his testimony, Bove confirmed that he prepared the

---

[1] Defense counsel also attached a copy of the affidavit to her post-hearing brief.

warrant affidavit and swore to its truth before the warrant judge. He confirmed that "there is nothing that needs to be added to the affidavit." In other words, while testifying at the suppression hearing, he adopted the accuracy of his affidavit. Defense counsel then had an opportunity to cross-examine Bove on the contents of the affidavit and on the rest of his hearing testimony.

To summarize the evidence, in April 2016, two different units of the Jersey City Police Department received multiple citizen complaints reporting that a man named "Alexis" was selling large amounts of marijuana from a specific address on Paterson Street (Paterson Street house).[2] The police also received a complaint that Alexis was selling heroin from the second floor of the house. The complainants described Alexis as a bald, light-skinned Hispanic male. The information was relayed to Officer Bove, a member of the street crimes unit, who had extensive training in narcotics-related investigations. Bove researched various databases, learned that Alexis Nunez lived at the Paterson Street house, and obtained a photo of Nunez.

On April 18, 2016, Bove conducted undercover surveillance of the Paterson Street house. That evening, he saw defendant Nunez emerge from the

---

[2] We do not provide the exact address in order to protect the privacy of the occupants.

 A-5598-16T4

house and stand on the front steps holding an orange and white shopping bag. A short time later, Bove saw a white Buick Rendezvous automobile drive slowly westbound down Paterson Street. The Buick slowed down in front of the Paterson Street house, and Bove saw the driver (later identified as co-defendant Guerrero) motion to defendant, pointing west toward Passaic Street. The Buick drove past the house, continued down Paterson Street, and turned right on Passaic Street. Within thirty seconds, Bove saw Guerrero run around the corner from Passaic Street down Paterson Street, and saw him meet defendant a few doors down from defendant's house. The two men conducted a brief conversation, after which defendant passed the shopping bag to Guerrero. Right after the exchange, Guerrero walked back down Paterson Street and disappeared around the corner on Passaic Street.

Bove called the perimeter unit officers, who were in the area, to alert them. Those two officers observed Guerrero get back into the Buick as a passenger. They stopped the Buick, based on Bove's observations. During the stop, Guerrero gave the officers the shopping bag, which turned out to contain about

a half-pound of marijuana.  They relayed that information to Bove, who continued his surveillance of defendant.[3]

Bove saw defendant go back into his house and, through a window, he saw defendant ascend to the second floor.  About an hour later, Bove saw defendant come downstairs and leave the house carrying two backpacks.  He observed defendant walk down a driveway, carrying the backpacks, and enter one of several garages behind the house.  Bove testified that he saw defendant take a bicycle out of the garage, then take several small packets out of the backpacks and put them in a storage compartment under the seat of the bicycle.  Defendant left the backpacks in the garage, and began walking back up the driveway toward the street, wheeling the bicycle.  Bove alerted the two perimeter unit officers, who by that time had returned to the area after arresting Guerrero and taking him to the police station.

Bove testified that he knew the police needed to stop defendant before he left the area.  As all three officers stood on the street, defendant approached them with his bicycle.  They showed their badges and "informed him of their investigation."  While they were speaking with defendant, Bove and the other

---

[3] Defendant's prehearing brief did not contest the State's assertion that when the police stopped the car, Guerrero voluntarily handed over the bag of marijuana.

officers began smelling the odor of raw marijuana coming from defendant's person and his bicycle. At that point, they arrested him, and retrieved three bags of marijuana from the compartment under the bicycle seat.

Based on that information, Bove applied for and obtained a warrant to search the garage and defendant's house. At the hearing, Bove conceded that his affidavit stated that there were three garages behind the house, when in fact there were five garages. However, he explained that from his vantage point on the street, he could only see three garages. He also confirmed that the police only searched the specific, distinctly marked garage described in the warrant.

Inside the garage, the police found assorted contraband, including several packages of marijuana and two guns. Defendant was charged with multiple weapons and drug offenses, including distributing marijuana to Guerrero and conspiring with Guerrero to distribute marijuana. Guerrero was also charged with drug offenses, including conspiring with defendant to distribute marijuana. Defendant pled guilty to possessing one of the guns while a convicted felon, and the State dismissed the other drug and weapons charges.

II

In reviewing the trial court's decision of a suppression motion, we defer to the court's factual findings so long as they are supported by substantial

credible evidence. State v. Gamble, 218 N.J. 412, 424-25 (2014). We will disturb the trial court's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). However, we do not defer to the trial court's legal interpretations. Gamble, 218 N.J. at 425. We review a judge's evidentiary rulings for abuse of discretion. State v. Nantambu, 221 N.J. 390, 402 (2015).

The trial court held that defendant did not have standing to challenge the stop of Guerrero's car. We cannot agree with that legal conclusion. Based on principles discussed in State v. Randolph, 228 N.J. 566 (2017), and State v. Mollica, 114 N.J. 329 (1989), we conclude that defendant had standing to challenge the stop of the co-defendant's automobile. Both cases recognize that a defendant may have standing based on a participatory interest in contraband seized in the search of a third party. Randolph, 228 N.J. at 582; Mollica, 114 N.J. at 340.

In Randolph, the Court summarized the relevant standard and the three important purposes it serves:

> Although the proprietary, possessory, or participatory interest standard "incorporates the notion of a reasonable expectation of privacy, [it] also advances other important state interests." Those

interests are evident in the three principles undergirding New Jersey's standing rule.

The first principle is that "a person should not be compelled to incriminate himself by having to admit ownership of an item that he is criminally charged with possessing in order to challenge the lawfulness of a search or seizure." The second is that the State should not take seemingly conflicting positions at a suppression motion and trial. Thus, our standing rule restricts the State from arguing, on one hand, that the defendant did not possess a privacy interest in the place searched or property seized for standing purposes while, on the other, arguing that the defendant is inextricably tied to the place searched and possessed the item seized to prove his guilt. The last principle is that "by allowing a defendant broader standing to challenge evidence derived from unreasonable searches and seizures under our State Constitution, we increase the privacy rights of all New Jersey's citizens and encourage law enforcement officials to honor fundamental constitutional principles." Thus, a defendant challenging a search under New Jersey's standing rule may be vindicating the rights of others as well.

[Randolph, 228 N.J. at 582-83 (alteration in original) (citations omitted).]

Our State's rule of automatic standing "confers standing on a person who 'had some culpable role, whether as a principal, conspirator, or accomplice, in a criminal activity that itself generated the evidence.'" State v. Bruns, 172 N.J. 40, 51 (2002) (quoting Mollica, 114 N.J. at 339-40); see also State v. Biancamano, 284 N.J. Super. 654, 659 (App. Div. 1995) (concluding, based on

8

State v. Alston, 88 N.J. 211, 228 (1981), that an accused student drug dealer had standing to challenge the principal's allegedly illegal search of a drug-filled pen possessed by a student to whom defendant allegedly distributed drugs).  Thus, in Mollica, the defendant's participatory interest in a gambling conspiracy gave him standing to challenge the warrantless search of a co-defendant's hotel phone records.  Mollica, 114 N.J. at 340.

The automatic standing rule may not apply if the search is too attenuated from a defendant's alleged illegal activity.  Bruns, 172 N.J. at 56.  In Bruns, for example, the stop of a third party's automobile occurred a week after the crime with which defendant was eventually charged, and it was completely unrelated to any investigation of that crime.  Id. at 57.  That is not the case here, where the stop of Guerrero's car followed almost immediately after defendant's alleged distribution of the drugs to Guerrero, and the stop was an integral part of the investigation of defendant's drug dealing activity.  Additionally, possession of the drugs was a necessary antecedent to distributing them.

Because defendant had a participatory interest in the contraband and the underlying drug deal that justified the stop, he had standing to challenge the stop.  See Mollica, 114 N.J. at 340.  Accordingly, we part company with the trial court on the standing issue.

A-5598-16T4

On the other hand, we agree with the trial court that the vehicle stop was lawful, as was the stop of defendant and the search of his bicycle, and the search warrant was properly issued. Hence, the court correctly denied the suppression motion. Before addressing the trial court's factual findings, we briefly address the evidence he considered. We conclude that the trial court was entitled to consider the facts to which Bove attested in his warrant affidavit, because the State presented Bove as a witness at the suppression hearing, and the defense had a full and fair opportunity to cross-examine him on the contents of the affidavit. [4]

Defendant's reliance on State v. Attwood, 232 N.J. 433 (2018), is misplaced. In Attwood, the State refused to present a witness at the suppression hearing, insisting instead that it was entitled to rely exclusively on a search warrant affidavit. Id. at 446-47. The State also relied on the novel and entirely meritless contention that the issuance of a search warrant could serve as after-the-fact justification for a prior warrantless search. Id. at 446. The Court emphatically rejected the State's argument. Id. at 446-47. In that context, the

---

[4] The State incorporated facts from the warrant affidavit in its pre-hearing brief, and the judge considered those facts as established based on what he found to be Bove's credible testimony.

Court noted that at a suppression hearing, the State was obligated to produce witnesses whom the defense could cross-examine, and could not simply rely on the warrant affidavit. Id. at 446. In this case, the State did not rely on issuance of the search warrant to justify the vehicle stop or the search of defendant's bicycle. Rather, the State presented a witness, and the defense cross-examined him.

Next, we consider whether, given the facts as found by the trial court, Bove and his colleagues had reasonable grounds to suspect that Guerrero had just obtained illegal drugs from defendant, so as to justify the stop of the car.

> The United States Supreme Court has described the reasonable-suspicion standard as requiring "some minimal level of objective justification for making the stop." Its application is highly fact sensitive and, therefore, not "readily, or even usefully, reduced to a neat set of legal rules." Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate, so long as the officer maintains an objectively reasonable belief that the collective circumstances are consistent with criminal conduct.
>
> [State v. Nishina, 175 N.J. 502, 511 (2003) (citations omitted).]

We agree with the trial court that under the totality of the circumstances, there were grounds for reasonable suspicion. State v. Arthur, 149 N.J. 1 (1997), involves an analogous situation, although in that case, the defendant challenged

11

the police stop of his customer while she was walking on the street, after she bought drugs from defendant.  Id. at 3.  The police observed defendant sitting in his parked car, and saw a woman get into the car and have a short conversation with defendant, after which defendant gave her a brown paper shopping bag.  Id. at 4.  The woman departed the scene after looking anxiously around.  Ibid. Based on those facts, the police stopped the woman and seized the bag.  Id. at 5.

Most significantly, in Arthur the Court found that under all the circumstances, the police had reasonable grounds to engage in an investigatory stop of the woman.  Id. at 15.  As in Nishina, the Court emphasized that the issue is not whether what the police observed could possibly have an innocent explanation.  Arthur, 149 N.J. at 11.  Rather, the issue is whether, viewed in context, which includes the police officer's training and experience, the circumstances are consistent with (in this case) the distribution of illegal drugs. Id. at 11-12.  We conclude they were.

In this case, the police received multiple citizen complaints about alleged large-scale marijuana dealing by an individual who fit defendant's description and who lived at a specific named address.  Bove's investigation confirmed defendant's name, photograph, and the fact that he resided at that address.

During his undercover surveillance, Bove saw defendant leave the house with a shopping bag and stand outside on the steps.

Bove then saw Guerrero and defendant engaging in activity consistent with an exchange of a large quantity of illegal drugs. Their conduct appeared facially suspicious. Although Guerrero evidently intended to have only a momentary transaction with defendant, he took pains to avoid stopping in front of defendant's house. Instead he drove around the corner, while signaling to defendant to head west on Paterson Street. Then Guerrero ran back around the corner from Passaic Street to a location on Paterson Street that was a few houses away from defendant's house. There, the men engaged in a short conversation, and defendant handed over a shopping bag to Guerrero, who went back around the corner.

Viewed against the backdrop of multiple citizen complaints about defendant's large-scale drug dealing from the Paterson house, this course of conduct gave rise to a reasonable suspicion that Guerrero was in possession of illegal drugs in the shopping bag. Thus, the police had lawful grounds to conduct a stop of Guerrero's vehicle. See Arthur, 149 N.J. at 12-13.

Once Bove's colleagues informed him that they had retrieved the marijuana from Guerrero, Bove had reasonable grounds to conduct an

investigatory stop of defendant. See Nishina, 175 N.J. at 514-15. Those grounds also included Bove's prior observation of the exchange of the shopping bag and his observation of defendant putting small objects under the seat of his bicycle. In addition, according to Bove, when Bove and his colleagues approached defendant, they smelled raw marijuana coming from defendant's person and his bicycle. The smell of marijuana furnished separate and independent grounds on which to arrest defendant and search his bicycle. See State v. Witt, 223 N.J. 409, 450 (2015); Nishina, 175 N.J. at 515-16.

The trial court's decision to deny the motion was supported by substantial credible evidence. Gamble, 218 N.J. 424-25. Because the search warrant was not the product of an illegal search or seizure, the trial court correctly denied the suppression motion. Defendant's appellate arguments do not warrant further discussion. R. 2:11-3(e)(2). We affirm the order on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION