**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5703-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RICHARD J. FREEMAN,

     Defendant-Appellant.

_____

     Submitted March 19, 2019 – Decided August 20, 2019

     Before Judges Rothstadt and Gilson.

     On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-06-1206.

     Joseph E. Krakora, Public Defender, attorney for appellant (Michele Erica Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

     Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Richard Freeman appeals from a judgment of conviction that was entered after a jury found him guilty of committing third-degree possession of a controlled dangerous substance (CDS) (cocaine), N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3); and second-degree possession of CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1. The trial judge sentenced defendant to an aggregate term of five years in prison with three years of parole ineligibility.

On appeal, defendant challenges the trial judge's reliance on the "plain view" doctrine to deny his suppression motion. He also contends, for the first time on appeal, that the trial judge erred by failing to instruct the jury with the entire model jury charge on expert testimony, Model Jury Charges (Criminal), "Expert Testimony" (rev. Nov. 10, 2003). Also for the first time, he challenges the trial judge's admitting into evidence, without proper authentication, a map of the municipality's drug-free zones that the State used to establish that defendant's possession of CDS with intent occurred within 500 feet of a public park. Finally, he argues that the trial judge committed reversible error in refusing to instruct the jury with the "mere presence" charge found in Model

Jury Charges (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6)" (rev. June 11, 2018).

We conclude from our review of the record and the applicable principles of law that defendant's suppression motion was properly denied. Also, although we agree with defendant that the map was admitted without the required authentication and it was erroneous to not charge the jury with the complete expert testimony and "mere presence" charges, we do not discern from the record the requisite harm or prejudice that would warrant reversal of his conviction. For those reasons, we affirm.

I.

The facts adduced at the suppression hearing and trial are summarized as follows. On February 27, 2015, an anonymous caller informed the Asbury Park police that the manager at an assisted living facility for disabled persons was selling narcotics to residents. Two officers responded and when they arrived, they met an employee who was standing outside. When they asked to speak with the facility's manager, the employee led them inside and downstairs to the basement area and she pointed to a door where she said the manager was located. As one of the officers walked down the hallway, there was an open bathroom door that led into a bedroom. The officer saw a man, who later turned out to be

defendant, counting money in the bedroom. The officer then knocked and looked in, observing a pile of cash and a plastic bag containing white powder on a dresser that he immediately recognized as potentially being cocaine. Defendant was placed under arrest. In a search incident to the arrest, the officers recovered additional money. Defendant was later indicted for the charges that the jury found him guilty of committing.

Before trial commenced, defendant filed a motion to suppress. At the suppression hearing, the arresting officer testified to the above version of what occurred and defendant also testified. Defendant's testimony differed from the police officer's. He stated that one of the officers confronted him while he was upstairs at his place of employment and then he was taken downstairs, where the officer went through drawers in a room that was used as a breakroom for the staff.

After the trial judge denied the suppression motion, and during the ensuing trial, the arresting officer testified that the facility at which defendant worked was located within 500 feet of a public park, according to a map that designated drug-free zones within the community and was obtained from the municipal clerk's office. The officer relied upon the municipal map and it was admitted into evidence without objection.

A-5703-16T4

The State called another officer as an expert in drug trafficking. After the officer completed his testimony, the trial judge instructed the jury as to their consideration of expert testimony.

After the State rested, defendant testified. He again disagreed with the police witnesses' version of events and explained that neither the money nor the cocaine belonged to him.

Prior to the jury deliberating, the trial judge gave the parties an opportunity to review his proposed jury instructions. Defendant did not object to the charge relating to the police officer's expert testimony or any other charge. He did request a charge on "mere presence," which the judge denied.

In his final charge to the jury, the judge included a general instruction relating to the credibility of witnesses, followed by the same instruction he gave after the State's expert testified. The judge did not read the entire Model Jury Charge for expert testimony. His charges included the Model Jury Charges' definition of possession.

Although given another opportunity to object to any of the judge's instructions before he released the jury to begin its deliberations, neither party raised any issues with the charges. The jury was released and later returned its unanimous verdict.

 A-5703-16T4

Defendant filed a motion for a new trial that the trial judge denied. The judge sentenced defendant and this appeal followed.

On appeal, defendant specifically argues the following four points:

POINT I

THE OFFICERS' WARRANTLESS CONDUCT FELL OUTSIDE THE SCOPE OF THE PLAIN VIEW DOCTRINE BECAUSE THEIR DISCOVERY OF THE EVIDENCE WAS NOT INADVERTENT.

POINT II

THE COURT OMITTED THE CRUX OF THE EXPERT JURY CHARGE, THUS LEAVING THE JURY WITHOUT ANY INSTRUCTIONS REGARDING HOW TO ASSESS SERGEANT SNOWDEN'S TESTIMONY AS AN EXPERT WITNESS. (NOT RAISED BELOW).

POINT III

THE STATE INTRODUCED ITS ONLY PROOF OF THE 500-FOOT ELEMENT, THE MAP, WITHOUT PROPERLY AUTHENTICATING THIS HEARSAY DOCUMENT. (NOT RAISED BELOW).

POINT IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ISSUE THE 'MERE PRESENCE' CHARGE.

We are not persuaded by any of defendant's contentions. We address them serially.

A-5703-16T4

Turning first to defendant's challenge in Point I to the denial of his suppression motion, he contends the trial judge's ruling was "patently erroneous" because the search of his place of employment was based upon a tip about him selling drugs. Therefore, the officers' investigation "necessarily entailed" a search for and discovery of CDS that was not inadvertent, making it outside the scope of the "plain view" exception for warrantless searches. We disagree.

At the suppression hearing, Asbury Park Police Officer Joseph Leon testified to the events leading up to defendant's arrest and the seizure of CDS from him at his place of employment. He stated that the information he and his partner received from dispatch was based upon an anonymous telephone call that said the manager of the facility, whom the caller identified as defendant, was "engaged in selling narcotics," which the officer understood to be heroin. Prior to arresting defendant, neither officer knew any of the other details of the information provided in the call.

Leon described how he inadvertently came to view the CDS on a dresser in the bedroom where defendant was found counting money. According to Leon, after the facility's employee walked him down the stairs and directed him to a bathroom, he observed a "small bedroom adjoined or connected to this

bathroom," that was accessible through the bathroom. The officer looked into the open-doored bedroom where he saw defendant. He then knocked on the door, startling defendant who then placed the cash he had into his pocket. While speaking to defendant and explaining why the officers were present, Leon "was able to see a separate quantity of paper currency on top of the dresser, and next to that pile of cash . . . [he] observed a plastic bag containing what [he] immediately suspect[ed] to be CDS cocaine" and a straight edge razor blade. The officer seized the cash and CDS, and arrested defendant.

On cross-examination, Leon also explained that when he and the other officer were dispatched to the location, he did not "necessarily" expect to find CDS at the facility "because [they] were there looking to see if there w[ere] going to be drugs there . . . ." When he discovered the cocaine, Leon was surprised because "nine times out of ten, calls like that just . . . don't end up in that type of situation."

In a written decision issued on March 1, 2016, the trial judge stated his reasons for denying defendant's motion. In his decision, the judge made specific credibility findings, in which he found Leon credible, and he set forth his findings based upon the officer's testimony.

In his legal analysis of whether the plain view exception applied, the judge addressed whether the officers' discovery of the CDS was inadvertent. The judge stated "[w]hile the officers were conducting a narcotics investigation, they were under the impression that they would find a large amount of heroin. Seeing a small amount of cocaine on the defendant's dresser was an inadvertent observation Leon made as he looked around the room from the hallway." The judge concluded that the discovery of the CDS was made in plain view and denied the motion.

Our review of a trial judge's evidentiary rulings is limited as they are reviewed only for an abuse of discretion. State v. Cole, 229 N.J. 430, 449 (2017). In our review, we defer to a trial judge's findings of fact on pre-trial suppression motions and will not reverse unless the findings are so mistaken and unsupported by the evidence that it is necessary to intervene. State v. S.S., 229 N.J. 360, 374 (2017); see also State v. Sencion, 454 N.J. Super. 25, 31 (App. Div. 2018). "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)).

A-5703-16T4

We defer to the motion judge's factual findings when supported by sufficient evidence in the record "because the motion judge, unlike an appellate court, has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gonzales, 227 N.J. 77, 101 (2016) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We also defer to the court's credibility findings. State v. Locurto, 157 N.J. 463, 472 (1999). "We owe no deference, however, to conclusions of law made by trial courts in suppression decisions, which we instead review de novo." Sencion, 454 N.J. Super. at 31-32; see also State v. Watts, 223 N.J. 503, 516 (2015).

Applying our deferential standard of review, we conclude that the trial judge properly relied upon the plain view doctrine in denying defendant's suppression motion.

Like its federal counterpart, Article I, Paragraph 7 of the New Jersey Constitution protects against "unreasonable searches and seizures" and generally requires a warrant issued on "probable cause." N.J. Const. art. I, ¶ 7; see U.S. Const. amend. IV. "[A] warrantless search is presumptively invalid" unless the State establishes the search falls into "one of the 'few specifically established and well-delineated exceptions to the warrant requirement.'" Gonzales, 227 N.J. at 90 (quoting State v. Edmunds, 211 N.J. 117, 130 (2012)); see also Sencion,

454 N.J. Super. at 32. One such exception is the "plain view" doctrine, which allows seizures without a warrant if an officer is "lawfully . . . in the area where he observed and seized the incriminating item or contraband, and it [is] . . . 'immediately apparent' that the seized item is evidence of a crime." Id. at 101 (quoting State v. Bruzzese, 94 N.J. 210, 236 (1983)).

In order to satisfy the plain view doctrine at the time when this case was decided,[1] the State must have demonstrated:

> (1) the officer was "lawfully in the viewing area," (2) the officer discovered the evidence "'inadvertently,' meaning that he did not know in advance where the evidence was located nor intend beforehand to seize it," and (3) it was "immediately apparent" that the items "were evidence of a crime, contraband, or otherwise subject to seizure."
>
> [State v. Earls, 214 N.J. 564, 592 (2013) (quoting State v. Mann, 203 N.J. 328, 341 (2010)).]

Here, defendant is only disputing the inadvertency prong. This prong is "satisfied when the police 'did not "know in advance the location of the evidence and intend to seize it," essentially relying on the plain-view doctrine only as a pretense.'" State v. Lane, 393 N.J. Super. 132, 146-47 (App. Div. 2007) (quoting State v. Johnson, 171 N.J. 192, 211 (2002)).

---

[1] In Gonzales, the New Jersey Supreme Court eliminated on a prospective basis the inadvertence prong of the plain-view test. 227 N.J. at 99.

At defendant's suppression hearing, there was no evidence that undermined the trial judge's finding that the officers' discovery of the CDS was inadvertent. The evidence that the judge found credible established that police received a tip that defendant was selling heroin at his place of employment and they went into the facility to investigate that advice. The officer did not expect to find any CDS as such calls were, as he testified, usually unfounded and made only to harm the subject of the call. There was no evidence that either officer knew from the tip or otherwise that there was CDS at the facility or where CDS was located within the facility. All they knew was that someone was alleged to be selling CDS to residents. They "did not know in advance where [the] evidence was located nor intend[ed] beforehand to seize it." Mann, 203 N.J. at 341 (quoting Bruzzese, 94 N.J. at 236). Under these circumstances, we have no cause to disturb the trial judge's decision to deny defendant's suppression motion.

### III.

Next, we address defendant's challenge in Point II to the trial judge's jury charge about the expert witness that testified for the State. The State called its expert, Sergeant George Snowden, a member of the narcotics strike force with

12

the Monmouth County Prosecutor's Office. He testified to his training and background and to the sale and distribution of CDS within the county.

Following that testimony, the trial judge instructed the jurors:

> Ladies and gentlemen, as a general rule witnesses can only testify about facts known to them. This rule ordinarily does not permit the opinion of a witness to be received as evidence; however, an exception to this rule exists in the case of an expert witness who may give his opinion as to any matter in which he is versed which is material to the case.
>
> In legal terminology, an expert witness is a witness who has some special knowledge, skill, experience, or training that is not possessed by the ordinary juror and who, thus, may be able to provide assistance to the jury in understanding the evidence presented and determine the facts in this case.
>
> In this case the State called Detective George Snowden of the Monmouth County Prosecutor's Office as an expert in the field of illegal distribution of controlled dangerous substances.

Later, before the trial judge gave the jury its final instructions, the judge gave the parties an opportunity to review the proposed charges. Defendant did not object to the expert testimony instruction, which was the same charge the judge gave earlier, or ask for anything more.

13

In his final charge to the jury, the trial judge gave a general instruction following the Model Jury Charges relating to the jurors' determination of the credibility of all witnesses. He stated the following:

> As the judges of the facts you are to determine the credibility of the witnesses, and in determining whether a witness is worthy of belief and, therefore, credible, you may take into consideration: [t]he appearance and demeanor of the witness; the manner in which he or she may have testified; the witness' interest in the outcome of the trial, if any; the witness' means of obtaining knowledge of the facts; the witness' judgment and understanding; the witness' ability to reason, observe, recollect, and relate; the possible bias, if any, in favor of the side for whom the witness testified; the extent to which, if at all, each witness is corroborated, contradicted, supported, or discredited by other evidence; whether the witness testified with the intent to deceive you; the reasonable or unreasonableness of the testimony the witness has given; whether the witness made any inconsistent or contradictory statement; any evidence which would serve to support or discredit the witness' testimony.
>
> Through this analysis you weigh the testimony of each witness and then determine the weight to give the testimony. Through this process you may accept all of the testimony, a portion of it, or none of it.

Afterward, the judge delivered the same instruction he gave after Snowden testified. He did not read the entire Model Jury Charge for expert testimony.

On appeal, defendant asserts that it was plain error for the trial judge to not instruct the jury with the complete charge pertaining to expert witnesses as it

14

deprived defendant of his due process rights as well as a fair trial, warranting a reversal of his conviction. He emphasizes that without the complete instruction, the jury could not properly gauge the testimony and that the failure to issue the full instruction was clearly capable of producing an unjust result under <u>Rule</u> 2:10-2.

The complete expert witness charge states the following:

> As a general rule, witnesses can testify only as to facts known by them. This rule ordinarily does not permit the opinion of a witness to be received as evidence. However, an exception to this rule exists in the case of an expert witness who may give (his/her) opinion as to any matter in which (he/she) is versed which is material to the case. In legal terminology, an expert witness is a witness who has some special knowledge, skill, experience or training that is not possessed by the ordinary juror and who thus may be able to provide assistance to the jury in understanding the evidence presented and determine the facts in this case.
>
> In this case, (list experts and areas of expertise) or (State and defendant) or (State only) (were called as experts) (or called experts).
>
> You are not bound by such expert's opinion, but you should consider each opinion and give it the weight to which you deem it is entitled, whether that be great or slight, or you may reject it. In examining each opinion, you may consider the reasons given for it, if any, and you may also consider the qualifications and credibility of the expert.
>
> It is always within the special function of the jury to determine whether the facts on which the answer or testimony of an expert is based actually exist. The

A-5703-16T4

value or weight of the opinion of the expert is dependent upon, and is no stronger than, the facts on which it is based. In other words, the probative value of the opinion will depend upon whether from all of the evidence in the case, you find that those facts are true. You may, in fact, determine from the evidence in the case that the facts that form the basis of the opinion are true, are not true, or are true in part only, and, in light of such findings, you should decide what affect such determination has upon the weight to be given to the opinion of the expert. Your acceptance or rejection of the expert opinion will depend, therefore, to some extent on your findings as to the truth of the facts relied upon.

The ultimate determination of whether or not the State has proven defendant's guilt beyond a reasonable doubt is to be made only by the jury.

[Model Jury Charges (Criminal), "Expert Testimony" (rev. Nov. 10, 2003).]

We begin our consideration of defendant's contention by acknowledging that "[a]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). "The trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "Thus, the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case,

16

irrespective of the particular language suggested by either party.'" <u>Ibid.</u> (alteration in original) (quoting <u>Reddish</u>, 181 N.J. at 613). A jury charge "must be read as a whole in determining whether there was any error." <u>State v. Torres</u>, 183 N.J. 554, 564 (2004). The appropriate test to apply "'is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law.'" <u>State v. McKinney</u>, 223 N.J. 475, 496 (2015) (citing <u>State v. Jackmon</u>, 305 N.J. Super. 274, 299 (App. Div. 1997)).

"Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." <u>Id.</u> at 495 (quoting <u>State v. Bunch</u>, 180 N.J. 534, 541-42 (2004)). However, a party may be prejudiced by failing to object to any charge if "there was an opportunity to object to a ruling, order or charge." <u>R.</u> 1:7-2.

When a defendant fails to object to an error regarding jury charges, we review for plain error. <u>R.</u> 1:7-2; <u>State v. Funderburg</u>, 225 N.J. 66, 79 (2016). "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" <u>Funderburg</u>, 225 N.J. at 79 (quoting <u>R.</u> 2:10-2). "The mere possibility of an unjust result is not enough. To warrant reversal by this [c]ourt, an error at trial must be sufficient

to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" Ibid. (second alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361, (2004)). "[P]lain error requires demonstration of '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Burns, 192 N.J. 312, 341 (2007) (second alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

Applying these guiding principles, we conclude the trial judge mistakenly failed to charge the jury with the complete charge, but that mistake did not constitute plain error. See State v. Hyman, 451 N.J. Super. 429, 455-57 (App. Div. 2017) (finding no plain error where trial court failed to give Model Jury Charge on "expert testimony" but delivered a "hybrid" charge by relying on "[t]he general charge on credibility"). The general credibility charge the judge gave instructed jurors to consider all of "the witness' means of obtaining knowledge of the facts; the witness' judgment and understanding; [and] the witness' ability to reason, observe, recollect, and relate . . . ." Importantly, in combination with the charge he gave twice about Snowden being called as an

expert, the judge's final charge made clear that as with all witnesses, the jurors were to "weigh the testimony of each witness and then determine the weight to give the testimony. Through this process [they could] accept all of the testimony, a portion of it, or none of it." Under these circumstances, we discern no plain error.

IV.

We turn to defendant's contention in Point III that the trial judge erred by admitting a map into evidence without proper authentication. It is undisputed that defendant did not raise any challenge to the map's admission before the trial judge.

Where a defendant does "not object on the same ground on which he challenges the admission of the map before this [c]ourt, we . . . review the admission of the map for plain error." State v. Dorn, 233 N.J. 81, 92 (2018) (not reviewing for plain error where the Court found that defendant waived objection by not accepting trial court's offer to require production of appropriate witness to authenticate map). We will find plain error if an "error or omission . . . is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. "[T]he test to apply is whether the possibility of injustice is 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it

otherwise might not have reached.'" State v. Green, 447 N.J. Super. 317, 325 (App. Div. 2016) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). See also State v. Williams, 168 N.J. 323, 336 (2001).

The challenged map was introduced during Leon's trial testimony without any objection by defendant. The officer testified that he reviewed a map of the drug-free zones in Asbury Park as part of his investigation and determined that defendant's place of employment was located within 500 feet of Tot Lot Park, a public park. The State also introduced a copy of an ordinance that Leon recognized as establishing Asbury Park's drug-free zone map. He identified the signature on the map as the city clerk's and noted that the ordinance was originally prepared by the city engineer on February 1, 2007, and revised on April 14, 2009.

When questioned about the different colored circles that were indicated on the map, he explained that, "I guess orange circles show the 500-foot boundaries for public property and parks, the blue circles show the 1[,]000-foot boundaries for school zone, and I guess it would be somewhat of a darker blue shows the overlapping area." Leon designated on the map the location of defendant's place of employment in relation to one of the drug-free zones, indicating its proximity to Tot Lot Park.

At the end of the presentation of evidence and after the denial of defendant's motion to acquit, the judge reviewed with both parties' counsel the evidence to be admitted and then given to the jurors during their deliberations. Defendant did not object to the ordinance or to the map pertaining to the drug-free zones being admitted or released to the jurors.

On appeal, defendant specifically argues that under State v. Wilson, 227 N.J. 534 (2017), Leon's testimony was insufficient to authenticate the map. We agree.

"In Wilson, . . . . [t]he defendant objected [at trial to a map's admission], arguing that the map was testimonial hearsay and that its admission violated his confrontation rights because the State did not produce a witness who had either prepared the map or could testify to its accuracy." Dorn, 233 N.J. at 91 (citations omitted). The Supreme Court concluded "that such maps are not self-authenticating, and explained that '[p]roper authentication of the map require[s] a witness who [can] testify to its authenticity and be cross-examined on the methodology of the map's creation and its margin of error . . . .'" Id. at 91-92 (alterations in original) (citations omitted).

However, unlike the defendant in Wilson, here, defendant made no objection. Moreover, in support of his appellate argument, he fails to

21

demonstrate that the admitted map, although not properly authenticated, failed to properly depict that the location of his offense was not within 500 feet of the park. Without any demonstration of how the admitted map caused an injustice, we conclude there was no plain error.

V.

Finally, we consider defendant's argument in Point IV that the trial judge erroneously denied his request for a "mere presence" charge. The trial judge stated that he had never heard of the charge and that he was not inclined to specifically instruct the jury on it though he was inclined to instruct it on third-party guilt. He suggested counsel include "mere presence" in the summation, which counsel did during her closing argument.

The judge included in his charge instructions about the definition of possession under the charged offenses. Following the Model Jury Charge for Possession, the judge instructed in pertinent part, as follows:

> Possession means a conscious knowing possession, . . . either actual or constructive. A person is in actual possession of an item when he first knows what it is, that is, he has knowledge of its character, and, secondly, knowingly has it on his person at a given time.
>
> Constructive possession means possession in which the possessor does not physically have the item on his

person but is aware that the item is present and is able to and has the intention to exercise control over it.

So someone who has knowledge of the character of an item and knowingly has both the power and the intention at a given time to exercise control over it, either directly or through another person, is then in constructive possession of that item.

Here again, after the judge completed his charges to the jury, neither party raised any objections.

When a trial judge does not give a jury a charge requested by defendant, we must determine if the omission of the charge was not harmless error. See Macon, 57 N.J. at 337-38; State v. Marroccelli, 448 N.J. Super. 349, 370 (App. Div. 2017). "The test of whether an error is harmless depends upon some degree of possibility that it led to an unjust verdict." State v. Burton, 309 N.J. Super. 280, 289 (App. Div. 1998). "If the possibility of an unjust result is sufficient to raise in our minds a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached, a new trial is required." State v. Walden, 370 N.J. Super. 549, 562 (App. Div. 2004); see also State v. McLaughlin, 205 N.J. 185, 211-12 (2011). "The prospect that the error gave rise to an unjust result 'must be real [and] sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.'" Marroccelli, 448 N.J. Super. at 370 (alterations in original) (quoting State v.

J.R., 227 N.J. 393, 417 (2017)).  The standard of determining whether constitutional error warrants reversal requires the State to show beyond a reasonable doubt that the error did not contribute to the conviction.  See State v. Camacho, 218 N.J. 533, 548 (2014).

On appeal, defendant argues that the trial judge deprived him of his constitutional rights to due process and a fair trial by refusing to read the "mere presence" charge.  Citing to State v. Randolph, 228 N.J. 566, 592 (2017), defendant states that in that case, the Court "denounced" a trial court's lack of issuing a "mere presence" charge in a CDS constructive possession case.  Id. at 28.  He argues the trial judge in his case improperly denied his request for such a charge and attempts to distinguish the facts in his case from those in Randolph that took place in an apartment building "with less foot traffic," as opposed to the staff room here, which he describes as a "considerably-accessible common area."  According to defendant, this distinction "generates a far greater risk of juror confusion."

Defendant attempts to further distinguish his case by explaining that the jury here was required to determine whether he constructively possessed the cocaine placed on a dresser that was next to a bed on which he was sitting.  Without an instruction, he argues that the jury may have assumed that his

presence alone suggested involvement in the offenses. The failure to provide the "mere presence" charge, he asserts, "plainly warrants reversal" because there was no physical evidence linking him specifically to the drugs. We disagree.

The "mere presence" charge is set forth in the Model Jury Charge on accomplice liability. It states the following:

> Mere presence at or near the scene does not make one a participant in the crime, nor does the failure of a spectator to interfere make him/her a participant in the crime. It is, however, a circumstance to be considered with the other evidence in determining whether he/she was present as an accomplice. Presence is not in itself conclusive evidence of that fact. Whether presence has any probative value depends upon the total circumstances. To constitute guilt there must exist a community of purpose and actual participation in the crime committed.
>
> While mere presence at the scene of the perpetration of a crime does not render a person a participant in it, proof that one is present at the scene of the commission of the crime, without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is possible for the jury to infer that he/she assented thereto, lent to it his/her countenance and approval and was thereby aiding the same. It depends upon the totality of the circumstances as those circumstances appear from the evidence.
>
> [Model Jury Charges (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6)" (rev. June 11, 2018).]

25

The fact that it is contained in the accomplice liability charge is not a bar to it being used to explain the elements of other charges. As the Court observed in Randolph, it is a mistake to believe the "mere presence" charge can only be given in cases dealing with culpability for the acts of others. It expressly stated, "[n]o constraint barred the trial court from giving the 'mere presence' charge, and the better course would have been to give the charge to disabuse the jury of any possible notion that a conviction could be based solely on defendant's presence in the building." Randolph, 228 N.J. at 592.

In Randolph, the defendant was found hiding in an apartment above the apartment where the drugs were found that formed the bases for the criminal possession charges. Id. at 573-75. The defendant was not charged as an accomplice nor was the accomplice liability instruction given to the jury. The defendant requested that a "mere presence" instruction be provided to the jury and on appeal argued that the trial court's failure to deliver the charge was harmful error. Id. at 576, 580. Although the Supreme Court noted that the better course was to have given the charge, in light of the charges given on joint and constructive possession, the Court found the error harmless. Id. at 592-93. The Court stated that "[t]he charge, as a whole, sufficiently informed the jury —

without using the words 'mere presence'—that defendant's presence in the building, standing alone, would be insufficient to establish guilt." Id. at 592.

Accordingly, while the trial judge here should have given the charge, his failure to do so was harmless because it could not produce an unjust result. The judge's recitation of the possession charge established that defendant's mere presence in the bedroom was not sufficient to convict him as the State was also required to prove that defendant was "aware that the [CDS was] present and [defendant was] able to and ha[d] the intention to exercise control over it." As the Court concluded in Randolph, "giving the charge would have done no harm and possibly would have been of some benefit" but the failure to deliver it did not, on its own, result in harmful error warranting a new trial. Id. at 593.[2]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The Court remanded the case in order to determine whether the warrantless search of the apartment was justified and, in the event there was a retrial, whether the trial court should instruct the jury on flight, given the facts of the case. Randolph, 228 N.J. at 572.

A-5703-16T4